## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re Holiday RV Superstores, Inc., | ) | Chapter 11 |
| | ) | |
| Debtor, | ) | No. 03-13221 (MFW) |
| | ) | |
| Doerge Capital Collateralized Bridge Fund, L.P., et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary No. 05-52271 (MFW) |
| | ) | |
| Marcus Lemonis, et al., | ) | |
| | ) | |
| Defendants. | | |

## NOTICE OF APPEAL
## OR, IN THE ALTERNATIVE, OBJECTION TO
## <u>PROPOSED FINDINGS AND CONCLUSIONS</u>

Marcus Lemonis and FreedomRoads LLC, the Defendants, appeal under 28 U.S.C. § 158(a) from the order of the bankruptcy judge granting the Plaintiffs' motion to remand or abstain, announced in this adversary proceeding on the 5th day of December, 2005. A copy of the transcript of the announcement is attached hereto as Exhibit A.

The names of all parties to the order appealed from and the names, addresses, and telephone numbers of their respective attorneys are as follows:

1320533_1.DOC

| **Party** | **Counsel** |
|---|---|
| **Plaintiffs-Appellees** | |
| Doerge Capital Collateralized Bridge Fund, L.P., Armando Alonso, Francisco Alonso, Ernest David, Jr., and Thomas Hall | Christopher H. Horvay<br>Robert A. Carson<br>GOULD & RATNER<br>222 North LaSalle Street, 8th Floor<br>Chicago, Illinois 60601<br>(312) 899-1624 |
| | Jeremy William Ryan<br>SAUL EWING LLP<br>222 Delaware Avenue, Suite 1200<br>Wilmington, Delaware 19801<br>(302) 421-6805 |
| **Defendants-Appellants** | |
| Marcus Lemonis and FreedomRoads LLC | Arthur J. Howe<br>Ian H. Fisher<br>SCHOPF & WEISS LLP<br>312 West Randolph Street, Suite 300<br>Chicago, Illinois 60606<br>(312) 701-9300 |
| | Brett D. Fallon<br>MORRIS, JAMES, HITCHENS & WILLIAMS, LLP<br>222 Delaware Avenue, 10th Floor<br>Wilmington, Delaware 19899<br>(302) 888-6888 |
| **Creditors Trust** | |
| Charles J. Cummiskey, as Trustee<br>Smart and Associates LLP<br>Four Penn Center, Suite 1030<br>1600 JFK Boulevard<br>Philadelphia, Pennsylvania 19103 | |

In the event the December 5, 2005 announcement is deemed to be proposed findings of fact and conclusions of law, the Defendants object pursuant to Bankruptcy Rule 9033 to such proposed findings and conclusions on the grounds that this action is a core proceeding over

which the Bankruptcy Court should exercise jurisdiction. As explained in Defendants' briefs, this conclusion is appropriate because (a) the claims in the Plaintiffs' complaint are derivative of the debtor, (b) decisions regarding the action will require interpretation and enforcement of the Bankruptcy Court's confirmation order and reorganization plan, (c) the Plaintiffs' claims largely involve post-petition transfers of the debtor's assets, (d) the action could have an affect on the debtor's bankruptcy estate, and (e) the Plaintiffs have submitted to the jurisdiction of the Bankruptcy Court.

Dated: December 15, 2005                MORRIS, JAMES, HITCHENS & WILLIAMS LLP


Brett D. Fallon, Esquire (#2480)
222 Delaware Avenue, 10th Floor
Wilmington, DE 19801
Telephone: (302) 888-6888
Facsimile: (302) 571-1750
Email: bfallon@morrisjames.com

                and

Arthur J. Howe, Esquire
Ian H. Fisher, Esquire
Schopf & Weiss LLP
312 W. Randolph Street, Suite 300
Chicago, Illinois 60606
Telephone: (312) 701-9300
Facsimile: (312) 701-9335
Email: howe@sw.com
Email: fisher@sw.com
*Attorneys for Defendants Marcus Lemonis and
FreedomRoads LLC*

1320533/1

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | . Case No. 03-13221(MFW) |
| | . Chapter 11 |
| | . |
| HOLIDAY RV SUPERSTORES, | . |
| INC., | . |
| | . |
| Debtor. | . |
| . . . . . . . . . . . . . . . . | |
| DOERGE CAPITAL COLLATERALIZED | . Adv. No. 05-52271(MFW) |
| BRIDGE FUND, L.P., a Limited | . |
| Partnership, ARMANDO ALONSO, | . |
| an Individual, FRANCISCO | . |
| ALONSO, an Individual, | . |
| ERNEST DAVIS, JR., an | . Transferred from the United |
| Individual, and THOMAS HALL, | . States Bankruptcy Court for |
| an Individual, | . the Northern District of |
| | . Illinois |
| Plaintiffs, | . |
| | . Related to Docket No. 214/20 |
| v. | . |
| | . |
| MARCUS LEMONIS, an Individual,. | |
| and FREEDOM ROADS, L.L.C., a | . 824 Market Street |
| Limited Liability Company, | . Wilmington, Delaware, 19801 |
| | . |
| Defendants. | . December 5, 2005 |
| . . . . . . . . . . . . . . . . | . 11:33 a.m. |

TRANSCRIPT OF MOTION HEARING
BEFORE HONORABLE MARY F. WALRATH, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

| | |
|---|---|
| For Doerge Capital: | Saul Ewing LLP |
| | By:  JEREMY WILLIAM RYAN, ESQ. |
| | 222 Delaware Avenue |
| | Suite 1200 |
| | Wilmington, DE  19801 |
| | |
| Audio Operator: | Danielle R. Gadson |

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@optonline.net**

**(609) 586-2311   Fax No.   (609) 587-3599**

2

APPEARANCES (Cont'd.)

For Doerge Capital:                 Gould & Ratner
                                    By:  CHRISTOPHER J. HORVAY, ESQ.
                                         ROBERT A. CARSON, ESQ.
                                    222 North La Salle Street
                                    8th Floor
                                    Chicago, IL  60601
                                    (Video Conference Appearance)


For Freedom Roads, L.L.C            Morris, James, Hitchens &
and Marcus Lemonis:                  Williams, LLP
                                    By:  BRETT D. FALLON, ESQ.
                                    PNC Bank Center
                                    222 Delaware Avenue
                                    10th Floor
                                    P.O. Box 2306
                                    Wilmington, DE  19899


For Freedom Roads, L.L.C.           Schopf & Weiss LLP
and Marcus Lemonis:                 By:  IAN H. FISHER, ESQ.
                                    312 West Randolph Street
                                    Suite 300
                                    Chicago, IL  60606
                                    (Video Conference Appearance)


**J&J COURT TRANSCRIBERS, INC.**

3

1          THE CLERK:  All rise.  You may be seated.

2          THE COURT:  Good morning.

3          MR. FALLON:  Good morning, Your Honor.  Brett Fallon

4  for Freedom Roads, L.L.C.  I have my co-counsel attending via

5  video conference.  It's Ian Fisher.  He's a partner at the firm

6  of Schopf & Weiss, and we have moved his admission pro hac

7  vice, and Your Honor has granted that motion.  He will be

8  presenting the argument today for the defendants.

9          THE COURT:  All right.

10          MR. RYAN:  Good morning, Your Honor.  Jeremy Ryan on

11  behalf of Saul Ewing.  And I have Christopher Horvay with me on

12  the video conference as well for Doerge Capital, and we are the

13  movants.  And if it's all right with Your Honor, we did file an

14  amended agenda.  First thing this morning we sent it over.  Did

15  Your Honor get copies?

16          THE COURT:  I did get it.  Very well.  If it's all

17  right with Your Honor, I would like to let Mr. Horvay proceed

18  to presenting the motion.

19          THE COURT:  All right, you may.

20          MR. RYAN:  Thank you.

21          MR. HORVAY:  Thank you, Your Honor.  Are we

22  transmitting?

23          THE COURT:  Yes.

24          MR. HORVAY:  I have with me in the conference room

25  here my partner Bob Carson who was also moved for admission pro

**J&J COURT TRANSCRIBERS, INC.**

4

1  hac vice.

2          MR. CARSON:  Good morning, Your Honor.

3          MR. HORVAY:  Is Mr. Cummiskey in the courtroom?

4          MR. CUMMISKEY:  Yes, I am, Your Honor.

5          THE COURT:  Yes, he is.

6          MR. HORVAY:  Thanks very much.  Your Honor, the last

7  time we were before you, you were concerned regarding Mr.

8  Cummiskey's status as post-confirmation trustee, and I want to

9  explore that issue first with you because I don't think he has

10 yet been officially recognized or approved as the

11 post-confirmation trustee.

12         THE COURT:  Well, what are you asking?  Are you

13 asking him to testify?

14         MR. HORVAY:  Well, Your Honor asked Mr. Cummiskey the

15 last time we were before you to weigh in on the issue as to

16 whether or not the post-confirmation trust was asserting an

17 interest in this litigation that we brought in Lake County,

18 Illinois, and if -- and continued this in part so that Mr.

19 Cummiskey could weigh in on that issue.  If Mr. Cummiskey is

20 still going to request additional time to weigh in on that

21 issue and if that is important to Your Honor that you hear from

22 Mr. Cummiskey then obviously that would affect how we would

23 proceed this morning.

24         THE COURT:  All right.  Mr. Cummiskey?

25         MR. CUMMISKEY:  Your Honor.

5

1          THE COURT:  Where are you on this lawsuit?

2          MR. CUMMISKEY:  Last week -- well, actually after we

3    last met here, I took care of the necessary filings and on the

4    4th of November filed with the clerk the certification of

5    counsel and no objection, et cetera.  What I was not aware was

6    to send a copy to your chambers, and I mailed it last week.  I

7    don't know if you have received it yet.  With the receipt of

8    the order, and if you would sign it, then I could proceed and

9    take care of my responsibilities.  And my major concern with

10   this whole issue is there's approximately $25,000 remaining in

11   the estate and that if I have to take a position that requires

12   me to retain counsel, there' probably not going to be anything

13   left to distribute to anyone.

14         THE COURT:  Well, what have you done to date?

15         MR. CUMMISKEY:  I haven't done -- I've read the

16   documents that have been provided on my time, but I'm still --

17   once you sign the order then I can gather the information

18   relative to the unsecureds that have filed proofs of claim and

19   then get signature authority on the bank account and then make

20   the distributions.

21         THE COURT:  All right.  Well, let's proceed.

22         MR. HORVAY:  Your Honor, my concern here is whether

23   or not Mr. Cummiskey is going to express an interest on -- or a

24   position on whether or not this litigation is property of the

25   estate.  If it's not a concern to him, then we can I think

**J&J COURT TRANSCRIBERS, INC.**

6

1  proceed along with the argument this morning.  If he is

2  interested in taking a position as to whether or not this

3  litigation constitutes property of the estate, I don't want to

4  get into a situation where we argue the motion now then have to

5  come back yet another time to either hear the trustee's

6  position or argue with the trustee about it.

7      MR. CUMMISKEY:  Right at this point I feel that I

8  need representation to discuss it coherently at best.  However,

9  my -- like I said earlier, my major concern is -- as I read the

10 documents filed by the Doerge Group, my major concern is are

11 they going to seek any type of amounts from the estate over

12 which I would have signature authority?  That's my major

13 concern.  Because if they do, nobody is going to get paid until

14 this matter is resolved, and even then I don't know who would

15 get what at that point.  That's --

16     MR. HORVAY:  Let me respond if I could, Your Honor,

17 that we have no interest in seeking anything more from the

18 estate than what we sought in the proof of claim filed on

19 behalf of the Doerge Bridge Fund for the unpaid loan, which is

20 separate and apart from the injury and the damages we're

21 seeking here.  So the answer is unequivocally, no, we're not

22 seeking anything from the estate as a result of this

23 litigation.

24     MR. CUMMISKEY:  So my understanding is you'd be

25 satisfied with whatever the pro rata share would turn out to

**J&J COURT TRANSCRIBERS, INC.**

7

1 be?

2          MR. HORVAY: That's absolutely all we're entitled to

3 get as a result of the proof of claim. The lawsuit is

4 something completely separate.

5          MR. FISHER: Just for the record, the defendants

6 actually take a different position as whether the lawsuit is

7 separate and apart, and in fact I think the proof of claim,

8 which consists of the original complaint in this matter, would

9 be double dipping and would leave the trustee with the question

10 of whether to disallow the claim or not, depending upon whether

11 there was a recovery from Marcus Lemonis or Freedom Roads.

12          MR. HORVAY: Your Honor, we believe that is not a

13 correct characterization of the proof of claim. If Your Honor

14 looks at the proof of claim, you'll see it's based upon an

15 unpaid loan in the amount of $500,000. The lawsuit is attached

16 only as evidence of the unpaid loan. We're not seeking any

17 kind of double dipping. We're only entitled to one recovery,

18 and we don't think that's a proper characterization.

19          THE COURT: Well, is it a proper --

20          MR. HORVAY: But in any case --

21          THE COURT: Excuse --

22          MR. HORVAY: -- if that's Mr. Cummiskey's only

23 concern, then --

24          THE COURT: Excuse me -- excuse me. Are you seeking

25 anything more than the recovery of the loan in your complaint,


**J&J COURT TRANSCRIBERS, INC.**

8

1   however?

2           MR. HORVAY:  Yes, Your Honor.  We're seeking multiple

3   millions of damages on account of Mr. Lemonis's pre-petition

4   fraud, as a result of conspiracy with Mr. Lemonis, Mr. Adams,

5   and this Freedom Roads entity, which is not a debtor.  It's not

6   the reorganized debtor, and it's not the purchaser of the

7   debtor's equity.  And all of this was pre-petition frauds,

8   pre-petition acts.  The guts of each count of the complaint is

9   pre-petition fraud and the inducement practiced upon Mr.

10  Doerge's fund, upon the Alonsos, upon Mr. Hall and the other

11  plaintiff, all of which clearly occurred pre-petition by

12  non-debtor parties, by third parties, and these are all

13  non-derivative actions, and there was clearly a carve out for

14  non-derivative actions built into the plan.

15          THE COURT:  All right.  Just let me ask the trustee,

16  are you -- with the response of the plaintiffs that they are

17  seeking only the $500,000 claim for their loan through their

18  proof of claim, do you have any further interest in this

19  matter?

20          MR. CUMMISKEY:  Just the assurance that whatever

21  their pro rata share would be would satisfy the issue at hand.

22          THE COURT:  All right.

23          MR. FISHER:  Your Honor, may I?

24          THE COURT:  Yes.

25          MR. FISHER:  We -- I think that the points that Mr.

**J&J COURT TRANSCRIBERS, INC.**

9

1  Horvay raised are all the guts of the argument that we're going

2  to -- or that we were prepared to have today.  I would point

3  out that the successor liability claim by Doerge Capital in the

4  current case against Freedom Roads, which is Count 5 -- sorry,

5  Count 3 -- specifically seeks the $500,000.  If you look at

6  Page 18 of Exhibit A to their current motion, Doerge Capital

7  prays for judgment against Freedom Roads for, and then in an

8  amount, measure it with the proofs, in excess of $500,000.

9  That's what he's referring to as the loan.

10          MR. HORVAY:  That doesn't detract from our --

11          THE COURT:  Well, he's seeking it from, he is

12  asserting, someone other than the debtor.

13          MR. HORVAY:  That's correct, Your Honor.

14          MR. FISHER:  On the basis of successor liability,

15  yes, Your Honor.

16          THE COURT:  In the complaint, so -- all right, I'll

17  go to the argument.  Let me hear from the -- I guess the

18  movant.

19          MR. HORVAY:  Thanks very much, Your Honor.  Again,

20  we brought this action on behalf of five creditors who were

21  investors in Holiday RV.  They are suing Lemonis, a former

22  officer of Holiday RV and Freedom Roads, L.L.C., for

23  perpetration of various acts of fraud upon them in their

24  individual capacities committed pre-petition over a period of

25  years, and that's what our complaint says.  Neither the debtor

**J&J COURT TRANSCRIBERS, INC.**

10

1  nor the reorganized debtor is named or sought to be named in

2  this state law case which we brought in Lake County, Illinois,

3  and this case is really about defendants', again, non-debtor

4  parties, fraud and asset stripping pre-petition.  Accordingly,

5  we've moved to remand this case to State Court because we

6  believe that this court doesn't, in the end, in the final

7  analysis, have jurisdiction, nor should it take jurisdiction.

8       It doesn't matter whether you approach this under any

9  one of various standards.  Whether it be a question purely of

10  jurisdiction or a question of mandatory abstention or a

11  question of discretionary abstention, in the end, this case has

12  no effect upon the administration of the estate.  It has no

13  effect upon anything to do with the estate.  It does not

14  involve the estate in any fashion, and we don't believe that

15  either the five twenty -- Section 524 or the Section 1141

16  discharges are implicated either.

17       We haven't challenged the vesting order whereby the

18  property of the estate vested in the reorganized debtor.  We

19  have not set to upset that order in any fashion.  We haven't

20  challenged the provision of the plan whereby the equity of the

21  reorganized debtor vested in another one of Adams' entities,

22  Freedom Roads Minnesota, which is a different entity from the

23  defendant we have named here, Freedom Roads, L.L.C.  And

24  eventually they acknowledged that in their papers.

25       Most -- frankly, most of the assets of this Holiday

**J&J COURT TRANSCRIBERS, INC.**

11

1  RV entity were gone by the time the bankruptcy case was filed.

2  That's evident from the plan and disclosure statement.  It's

3  evident from the Borzilio affidavit in support of the first day

4  pleadings, which we filed most recently.  The whole purpose of

5  the Chapter 11, frankly, was to preserve the approximately $20

6  million NOL which resided in Holiday RV and eventually as a

7  result of the plan ended up in the reorganized debtor.  Most of

8  the remaining assets were gone pre-petition.  And, again, we in

9  no effect have challenged the discharge orders either in 1141

10  or 524.

11        Now, the plan explicitly carved out from the 1141

12  discharge any non-derivative claims, and turning to the

13  complaint, and if you go to the guts of the complaint, that's

14  what these claims are all about.  For example, Page 13 of the

15  complaint, which was Exhibit A to our motion, in Paragraph 67

16  through 71, it's all about pre-petition fraud practiced upon

17  Doerge by Lemonis, and that's where the loss and the injury

18  occurred.  Count 2 -- Counts 2 and 3 follow directly from Count

19  1.  Those are all about the acts which occurred pre-petition,

20  which stripped the assets and enabled the other Adams entity to

21  continue on with the assets.

22        Again, if you look at Davis's claims in Count 4,

23  that's all about pre-petition fraud.  It all occurred in 2000

24  and 2001, long before the bankruptcy at the time that Davis

25  sold his stock to Holiday RV.  It alleges fraud practiced upon

**J&J COURT TRANSCRIBERS, INC.**

12

1  him by Lemonis at that time.  And again, that's on Pages 19 and

2  20 of the complaint, Paragraphs 101 through 104.

3          And if you looked at the Alonso allegations, those

4  allegations appear on Page 24 of the complaint, Paragraphs 122

5  through 126.  Again, it's fraud by Lemonis that was practiced

6  upon the Alonsos pre-petition.  And all this conduct occurred

7  pre-petition.

8          The same thing in the final counts on behalf of Mr.

9  Hall.  Again, Paragraphs 153, 154, 157, on Pages 30 and 31,

10  again it refers to conduct that occurred pre-petition at the

11  time he entered into -- year 2000 when Mr. Hall entered into an

12  agreement to sell his interest in his company to Holiday RV.

13  Again, it refers to fraud practiced upon him pre-petition.

14          So, these claims, it's our contention, are entirely

15  non-derivative.  They're not derivative.  The estate has never

16  expressed any interest in pursing them, either prior to

17  confirmation, after confirmation.  Mr. Cummiskey, as

18  post-confirmation trustee, has no interest in them.  The debtor

19  certainly never pursued them in the Chapter 11 or expressed any

20  interest in them.  This case does not really implicate the 1141

21  discharge.  We haven't sued the debtor or the reorganized

22  debtor, which got the assets.  The corporate entity which we

23  did sue is admittedly a parent of an entirely different entity

24  which apparently got the equity, but we never challenged the

25  vesting of the equity in that entity.


**J&J COURT TRANSCRIBERS, INC.**

13

1          THE COURT:  Then what is the --

2          MR. HORVAY:  One of the arguments they make is that

3    we're --

4          THE COURT:  Excuse me.  What is the basis --

5          MR. HORVAY:  Yes, Your Honor.

6          THE COURT:  What is the -- if Freedom Roads is not

7    the reorganized debtor, what is the basis of your action

8    against it?

9          MR. HORVAY:  The basis of the action against it is

10   successor liability on account of its assumption of the role of

11   successor as a result of the pre-petition stripping of the

12   assets.  Most of these dealerships --

13         THE COURT:  It is the successor to the debtor, which

14   got a discharge of all claims against it.  Is that what you're

15   saying?

16         MR. HORVAY:  Understood, Your Honor, but it picked up

17   these assets before the debtor got the discharge.

18         THE COURT:  You're suing it as the purchaser of the

19   pre-petition assets, purchaser of the assets?

20         MR. HORVAY:  That's right, or the recipient -- I

21   don't know -- I don't know if it's fair to call it a purchaser

22   because we contend that these were not arm's length

23   transactions.  We're going after it as the recipient of the

24   assets as a result of the pre-petition fraud practiced upon our

25   clients.

**J&J COURT TRANSCRIBERS, INC.**

1          THE COURT:  And it obtained the assets pre-petition?

2          MR. HORVAY:  That's right, Your Honor.  We recognize

3    that within the discharge order there is a provision that

4    insulates them for anything that happened in the bankruptcy,

5    and we have absolutely no intention and do not seek to pursue

6    them for anything that happened in the bankruptcy.  We made

7    allegations concerning what happened in the bankruptcy because

8    Illinois pleading rules require a lot of fact pleading, a lot

9    of particularity.  We're -- we were just seeking to establish

10   the injury, but we recognize that we are barred by 1141 and by

11   the discharge order and the plan itself for pursuing them for

12   anything I believe that either the debtor, the reorganized

13   debtor, or that they in their role as lender did in the

14   bankruptcy.

15          One of the points that the other side argues is that

16   we are somehow asserting an encumbrance upon the assets of the

17   debtor.  That's absolutely not the case.  We have no

18   encumbrance.  We can't seek an encumbrance.  We're not seeking

19   to impose a lien.  Again, we're merely going after Lemonis,

20   certainly not a debtor party, and a different Adams entity,

21   Freedom Roads, L.L.C. as a result of their pre-petition

22   conduct, which is why we want it sent back to Lake County,

23   Illinois.  Thank you, Your Honor.

24          THE COURT:  All right, thank you.

25          MR. FISHER:  May I, Your Honor?

15

1          THE COURT:  Response, yes.  Yes, you may respond.

2          MR. FISHER:  Yes.  Rather than go through the case

3  law, I'm going to jump to one case and then to the complaint at

4  issue.  The Third Circuit, as well as the case law we've cited

5  from the Seventh Circuit in our briefing, which this was

6  pending in the Seventh Circuit at the time of our briefing, the

7  rule and removal cases that subject matter jurisdiction is to

8  be determined from the face of the complaint and on the basis

9  of the record in the State Court at the time the petition for

10  removal is presented.  That's actually from <u>Westmoreland</u>

11  <u>Hospital Association</u>, Third Circuit, 605 F.2d 119.  That's

12  black letter law.

13          What we need to focus on here is what does the

14  complaint say and what did the State Court record say when we

15  removed it?  The defendants feel that the assurances that the

16  Bankruptcy Court is now getting that they will not seek some

17  items that did go through the bankruptcy but they will seek

18  other recovery concerning other pre-petition transfers is the

19  very reason why the Bankruptcy Court should exercise

20  jurisdiction determining whether or not Freedom Roads is a

21  successor to the debtor, and determining whether or not

22  property flowed through the plan or not will require looking at

23  this Court's order and interpreting and giving effect to the

24  Court's orders.  And under <u>In re Allegheny</u>, that is -- makes

25  this a core proceeding.

**J&J COURT TRANSCRIBERS, INC.**

16

1          If we look at the complaint, Your Honor, which was
2    Exhibit A to the motion, the motion to remand, at Paragraph 57,
3    the plaintiffs do not limit their allegations to pre-petition
4    assets.  They state that through the conspiracy, "The remaining
5    assets of Holiday RV, the debtor, were," and there's a
6    paraphrase, "were," and quoting again, "recovered out of the
7    bankruptcy and then moved to Freedom Roads."  There were some
8    pre-petition transfers.  There was also property that flowed
9    through the bankruptcy, and that that forms in this complaint
10   the basis of their claim for successor liability.  And that can
11   be found also, Your Honor, in each of their successor liability
12   counts, which are Counts 3, 6, 9, and 12, where they say that
13   Freedom Roads assumed ownership and control of "all or
14   substantially all" of the debtor's assets.  The reason they
15   need to allege that is for successor liability a simple
16   transfer here or there will not impose successor liability, and
17   the amounts they seek in recovery are the amounts of money that
18   the plaintiffs gave, as they term it an investment, to the
19   debtor.
20          Another significant paragraph is Paragraph 121, which
21   was within the paragraphs that Mr. Horvay cited to.  You'll
22   find that on Page 24.  This is the two Alonso plaintiffs' claim
23   for successor -- for liability against the two defendants.  And
24   in that they point to the fact that they gave the shares of
25   County Line Select Cars, their company, to the debtor, and that

**J&J COURT TRANSCRIBERS, INC.**

17

1  included two dealerships which included real property in
2  Florida.  That property is still in the estate right now.  That
3  property is held by an entity that is ultimately owned by
4  Freedom Roads only because of this Court's plan and the final
5  confirmation order.  And in fact, that 1.5 million they seek is
6  the amount of a promissory note that the Alonso plaintiffs were
7  given in exchange for the dealership.
8          We can also look at the proof of claim in this
9  matter, which I alluded to earlier.  The plaintiff Doerge
10 Capital filed a proof of claim and attached its State Court
11 complaint to it and seeks recovery of $500,000.  That's the
12 same $500,000 that he seeks recovery for in this complaint.
13 The current complaint, by the way, Your Honor, is a re-filing
14 of the original complaint.  The original complaint,
15 interestingly, was filed against Marcus Lemonis and against the
16 debtor, Holiday RV Superstores.  It was then dismissed after
17 Holiday RV Superstores sought protection of this court.  Later,
18 the plaintiffs re-filed their case and the attorney filed a
19 certification that this was a re-filed matter of the earlier
20 proceeding seeking the same recoveries, but this time
21 substituting Freedom Roads as the defendant instead of Holiday
22 RV Superstores.  They've added a number of allegations, but
23 virtually all of the original complaint appears again in this
24 re-filed complaint.
25          And, Your Honor, I would point out that not only will

18

1  a determination of the merits of this case, whichever way it
2  comes out, require whatever court decides it to interpret your
3  order and the plan.  It could also affect the estate, and the
4  test is if it could conceivably affect the assets of the
5  estate.  And there are two ways.  There is the double dipping,
6  which I mentioned earlier where Doerge Capital seeks to recover
7  $500,000 on a proof of claim from the estate and he seeks to
8  recover that same $500,000 from what he claims is the
9  successor.
10        THE COURT:  Well, let me ask you a question here.
11  That is not unusual in instances, for example where others are
12  also liable with the debtor on a debt -- a guaranty,
13  indemnification, et cetera.  Why does that otherwise affect the
14  estate?
15        MR. FISHER:  Because, Your Honor, two things.  One,
16  even with a guaranty, double recoveries are not permitted.
17  Now, given the current estate, they're -- Doerge Capital is
18  unlikely to gain full satisfaction from the estate, but any
19  amounts that if, for some reason, Freedom Roads loses on the
20  claim and has to pay the $500,000, that would relieve, one
21  would think, the trustee of having to pay on the claim since it
22  was fully satisfied in the judgment against Freedom Roads.
23  Alternatively, if Freedom Roads prevails and is not liable for
24  successor liability, setting aside the whole issue of this
25  Court's injunction, permanent injunction, that extends to the

**J&J COURT TRANSCRIBERS, INC.**

19

1  successors too, then the trustee would have to deal with a

2  $500,000 claim against the estate which he still hasn't decided

3  and may not be able to decide whether to allow or not,

4  depending upon the outcome on the allegations in our case.  I'm

5  sorry, it looked like you had a question, Your Honor.

6          THE COURT:  I do.  Again, this is no different from a

7  guaranty, though, is it, where in suing on the guaranty someone

8  has to prove the underlying claim?

9          MR. FISHER:  Your Honor, I would -- it's similar to

10 the guaranty only to the extent that there are two parties and

11 between the two full satisfaction must be had.  It's different

12 than a guaranty in that in deciding whether or not the

13 guarantor had guaranteed the debt, the Court would not have to

14 interpret its order, interpret its plan, and determine whether

15 or not the defendant was a successor.  If your discharge order

16 in the guaranty case extended to relieve all guarantor's

17 liability, then it would be the same.

18         THE COURT:  We're not talking about -- we're talking

19 whether it affects the estate.

20         MR. FISHER:  Right.

21         THE COURT:  And the only effect is, well, they may

22 have a claim against somebody other than the estate for the

23 same claim.  That's your argument, and I think courts --

24         MR. FISHER:  That's part of it, yes.

25         THE COURT:  -- courts have not said that that's


**J&J COURT TRANSCRIBERS, INC.**

1  enough of an effect on the estate to give me jurisdiction.

2           MR. FISHER:  Well, Your Honor, I think that this is

3  an alternate basis, first of all.  The fact that your plan must

4  be interpreted and that there is going to have to be parsing as

5  to the assets of the bankruptcy estate that Freedom Roads has

6  that appear in there, in the complaint taken on its face, the

7  allegations are that those went to Freedom Roads and that

8  that's the basis for successor liability.

9           As an alternate basis for the exercise of

10 jurisdiction, yes, you have the question about whether or not

11 the $500,000 claim will be satisfied elsewhere or will not be

12 satisfied elsewhere.  Similarly, the trustee may want to await

13 allowing or disallowing the claim, depending upon whether or

14 not these allegations change and whether or not there is

15 liability in the underlying state case.

16          There is a third way, though, that it affects the

17 assets of the estate, which is the trustee has the exclusive

18 right to pursue avoidance actions, Code Section 544 through 550

19 claims, and many of the allegations in this complaint cover

20 such allegations.  I haven't even yet turned to the claims

21 against Marcus Lemonis, but an example of that would be the

22 allegation that he took a -- had the debtor buy him a 2003

23 Range Rover, that he had the debtor pay him $40,000 in

24 allegedly improper bonus, that he allegedly had the debtor pay

25 his personal expenses where it should not have.  Those are

21

1   claims that only the trustee can decide whether or not to

2   pursue.

3          THE COURT:  All right.

4          MR. FISHER:  I think that something that's very

5   telling is if we just look at the first paragraph of the

6   complaint.  The first paragraph opens with, "This action

7   relates to an insolvent and now bankrupt corporation known as

8   Holiday RV Superstores."  At the time of the filing of the

9   complaint, the plaintiffs were seeking recovery not only for

10  some pre-petition transfers, but a number of transfers that

11  occurred in the bankruptcy.  They're not alleging that the

12  actual bankruptcy was fraudulent, but they're alleging that

13  they can pursue Freedom Roads as a successor.  Now, whether or

14  not it's a successor under the plan requires looking at the

15  plan.

16         THE COURT:  Excuse me.  He's not asserting that it's

17  a successor under the plan.  He's asserting that it's a

18  successor because of the transfer of assets pre-petition.

19         MR. FISHER:  Your Honor, Mr. Horvay is asserting

20  that, yes.  Doerge Capital in its complaint, however, is

21  asserting that Freedom Roads is a successor because it acquired

22  all, or substantially all, of the assets.  Another point, it

23  claims that it is a successor because of the transfer of the

24  Florida properties, which are part of the bankruptcy estate, or

25  were part of the bankruptcy estate.  It's claiming that it's a

22

1  successor because of improperly acquiring, and it's a quote in

2  there, "Out of the bankruptcy the assets of the debtor."  So,

3  it's a mixed bag, which is going to require parsing the assets.

4  I don't think it's appropriate for the Lake County, Illinois,

5  judge to attempt to interpret your order and parse through

6  which pieces of property came outside of the plan.

7          THE COURT:  Well, why not?  Courts interpret other

8  courts' orders all the time.

9          MR. FISHER:  Because this is -- under the bankruptcy

10  jurisdiction, Your Honor, the court should specifically

11  interpret its own confirmation order, and that's why Congress

12  saw fit --

13          THE COURT:  No.

14          MR. FISHER:  -- to grant --

15          THE COURT:  No.  Courts have held that

16  post-confirmation, jurisdiction is limited, and it does not

17  require or grant exclusive jurisdiction to the Bankruptcy Court

18  to interpret its orders.  That's clear.

19          MR. FISHER:  Right.  You're now into the questions of

20  abstention as opposed to remand.

21          THE COURT:  No, I'm talking about post-confirmation

22  jurisdiction.  Courts have not held that the Bankruptcy Court

23  has jurisdiction, post-confirmation, even over interpreting its

24  own orders in the instance where it does affect the estate.

25  You have to go through a _Paycor_ analysis to see whether there's

**J&J COURT TRANSCRIBERS, INC.**

23

1   an effect on the estate.

2         MR. FISHER:  Well, Your Honor, I point out again that

3   the -- that there are three ways in which the estate could be

4   affected, and it's a conceivable effect on the estate, Your

5   Honor, I believe.  And I think it could conceivably affect the

6   estate on the basis of, first of all, the increase in the

7   estate if the trustee decides to pursue one of the claims.  I

8   --

9         THE COURT:  But the trustee has expressed no interest

10  in doing that.

11        MR. FISHER:  Right, but he could, and I think that

12  may be more because of the merits.  But the second way is --

13  whether or not this is allowed, the claim is allowed, could

14  depend upon whether or not the -- Doerge Capital is able to

15  recover something from Freedom Roads or Marcus Lemonis on his

16  other claims.  And I think, Your Honor, it also bears pointing

17  out that these are -- despite the characterizations

18  post-petition, these are derivative claims, Your Honor, against

19  Marcus Lemonis.  They're being re-spun as solely fraud claims,

20  but for each fraud claim in the second complaint, there is also

21  a breach of fiduciary duty claim that flows directly through

22  the corporation.

23        THE COURT:  All right.  Anything more?

24        MR. FISHER:  Well, Your Honor, I would stand on the

25  briefing for the other points.

J&J COURT TRANSCRIBERS, INC.

24

```
1              MR. HORVAY:  Your Honor, very briefly in response,
2    we're not asserting any Chapter 5 causes of action whatsoever
3    here.  What we're asserting are pre-petition fraud in the
4    inducement and breach of fiduciary duty claims.  As to those
5    breach of fiduciary duty claims, we specifically allege in the
6    complaint as to each plaintiff that they are seeking injury --
7    I'm sorry, recovery for injuries in their individual capacities
8    and not as a result of any diminution in value of their shares
9    as a result of those injuries.  So these are clearly --
10             THE COURT:  Well, let me --
11             MR. HORVAY:  -- non-derivative claims.
12             THE COURT:  Let me ask a question on that.  What
13   fiduciary duty did they owe -- did Mr. Lemonis owe to your
14   clients?
15             MR. HORVAY:  He owed them --
16             THE COURT:  The duty was owed to the debtor.
17             MR. HORVAY:  He owed them duties not to defraud them.
18   He owed them duties --
19             THE COURT:  Well, that's a fraud --
20             MR. HORVAY:  -- not to induce them.
21             THE COURT:  That's a fraud claim.  It's not a breach
22   of fiduciary duty.  What fiduciary relationship was there
23   between your clients and Mr. Lemonis?
24             MR. HORVAY:  Your Honor, we believe that he fell --
25   he related to them in a position of trust with regard to the
```

25

```
 1   representations he made to them concerning the role of Mr.

 2   Adams concerning what would be done with their investment

 3   interest.  It's really to a large degree a replay of the fraud

 4   counts, I must acknowledge.

 5           MR. FISHER:  Your Honor, may I point to the first

 6   fiduciary duty claim, Paragraph 80, "Lemonis, as chief

 7   executive officer and chairman of the board of directors, owed

 8   a fiduciary duty to the creditors of Holiday RV."  And then in

 9   the statements of the wrongful acts, Paragraph 81, they go

10   through a number of very -- of derivative claims.  When this

11   was filed and when this was removed, the fiduciary duty claims

12   were derivative.

13           MR. HORVAY:  Your Honor, we also alleged in Paragraph

14   83, and it follows through in each following count, both 82 and

15   83, that the plaintiff suffered individual damages representing

16   the loss of his investment, and that in 83 "Doerge Fund

17   incurred damages as alleged herein in its individual capacity

18   distinct from Holiday RV's other shareholders and separate and

19   apart from the decline in value," it reads "and," it should

20   read "in", "value of their shares, which also resulted from the

21   defendant's misconduct."  We believe that Illinois law provides

22   that if you can allege an injury that is separate and distinct

23   from -- in other words, that's an individual injury that is

24   separate and apart from any injury practiced upon the other

25   shareholders, then you can proceed on such a count.  If in the
```

26

1  end the State Court concludes otherwise, we'll deal with it.

2  The other point I wanted to make in response to opposing

3  counsel here is that I think Your Honor is absolutely correct

4  when you suggest that post-confirmation, jurisdiction is

5  extremely limited, and I point to the Cox/Zeran case, which we

6  cite throughout, which says that in the end if they're entitled

7  to an 1141 defense in State Court they can maintain and assert

8  that defense in State Court.  But this case, for these acts of

9  pre-petition fraud, has nothing to do with administration of

10  the estate or with -- and it doesn't relate to any claim that

11  arises under Title 11, and, therefore, we would ask for Your

12  Honor to remand it.

13       MR. FISHER:  Two points, if I might, Your Honor?

14  First of all, there apparently is a dispute as to whether

15  Illinois or Delaware law applies.  I do not believe there is

16  any dispute, however, over the fact that the debtor is a

17  Delaware Corporation.  It's our research that Delaware law

18  would apply, which obviously becomes an issue in the

19  discretionary abstention factors, that Illinois really has no

20  interest in this dispute.

21       On the Zeran case, I would point out that it's

22  distinguishable for two reasons, and actually its dicta goes on

23  to support the exercise of jurisdiction here.  In Zeran, it was

24  a personal injury claim for products liability.  It arose four

25  and a half years after the bankruptcy plan had been confirmed.

**J&J COURT TRANSCRIBERS, INC.**

27

1   There was no injury until four and a half years later.  Here,

2   all of the injury, as we've heard, happened according to the

3   complaint, both pre-petition and in the bankruptcy itself,

4   according to plaintiffs' argument today, pre-petition.  So I

5   think it's distinguishable there, and in many ways the Seventh

6   Circuit in that case -- it was a Seventh Circuit case -- was

7   attempting to deal with the finality of a plan -- sale out of a

8   plan.

9          The second point, Your Honor, is that the Coxes, the

10  plaintiffs in the <u>Zeran</u> case, were strangers to the bankruptcy,

11  and the Seventh Circuit took great pains to point out that, and

12  this is a quote that they -- "They had no opportunity even to

13  file a claim in the bankruptcy."  Here, the Doerge Capital

14  plaintiff has a claim pending in the bankruptcy.  In fact he

15  served on the unsecured creditors' committee.  And the two

16  Alonso plaintiffs had claims in the bankruptcy, which they have

17  since withdrawn, but nonetheless did participate in the

18  bankruptcy.

19         And then the third point is in dicta, the <u>Zeran</u> case

20  points out again that if there could be an effect, not if the

21  effect was going to happen, but if one could articulate an

22  effect on the bankruptcy, that it would be appropriate to

23  permit the court to exercise jurisdiction.

24         MR. HORVAY:  Only one comment in response.  In <u>Zeran</u>,

25  if anything it's a cleaner case of implication of the

**J&J COURT TRANSCRIBERS, INC.**

28

1  Bankruptcy Court's orders than here because -- and that case

2  involved both a sale order, a 363 sale order and a plan, and in

3  both cases they purported to bar claims as a result of products

4  placed into commerce by the debtor prior to the sale, and

5  that's allegedly where this injury occurred.  If anything, the

6  debtor's negligence occurred pre-sale, pre-petition, when it

7  placed the product into the stream of commerce, so I don't

8  think it cuts as counsel suggests.

9                          (Pause)

10          THE COURT:  Well, I'm going to do this.  I think that

11 the proper consideration for this Court is to determine whether

12 or not the complaint can have any effect on the estate, and I

13 respectfully disagree with counsel in asserting that it can.

14 To the extent that, you know, the plaintiffs in the underlying

15 action can recover from somebody else, I don't see that as

16 being a significant effect on the estate.  It's no different

17 from any other guaranty of a debt, and in those instances the

18 Bankruptcy Code deals with the ability of an entity to collect

19 twice.  Simply the fact that the trustee may have to object to

20 their claim on that basis is not sufficient effect on the

21 estate.  Otherwise, I think I would have to determine that I

22 have jurisdiction over every complaint in which a creditor of

23 the estate is seeking to collect from a third party who may

24 also be liable on that same debt.

25          Secondly, to the extent that the defendants are

**J&J COURT TRANSCRIBERS, INC.**

29

1   arguing that the complaint is seeking to collect derivative

2   claims, the plaintiffs deny that.  I don't think it's necessary

3   for me to decide whether it does or does not.  I think I can

4   simply state that the plan is clear that any derivative claims

5   were vested in the reorganized entity and that creditors

6   individually do not have the right to bring any derivative

7   actions.  To the extent that creditors have individual actions,

8   they may pursue those and the plan does not affect them.  I

9   think it's easy enough for any State Court or other court to

10  enforce the plan and confirmation order as it is for this

11  Court, and I don't think, again, the de minimis effect that

12  this may have on the estate by the continued prosecution of

13  non-derivative actions against third parties does not convince

14  me that I should exercise jurisdiction over the complaint.  So,

15  I will grant the remand.

16          MS. RYAN:  Thanks very much, Your Honor.

17          THE COURT:  Okay.

18          MR. RYAN:  Shall we have local counsel submit an

19  order, or how is that handled?

20          THE COURT:  Yes, submit a form of order, please.

21          MR. RYAN:  Thanks very much.

22          THE COURT:  All right, we'll stand adjourned then.

23          MR. RYAN:  Thank you.

24          UNIDENTIFIED ATTORNEY:  Thank you, Your Honor.

25          THE COURT:  Thank you.


**J&J COURT TRANSCRIBERS, INC.**

30

<u>C E R T I F I C A T I O N</u>

I, DENISE M. O'DONNELL, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, to the best of my ability.


<u>/s/ Denise M. O'Donnell</u>

DENISE M. O'DONNELL

J&J COURT TRANSCRIBERS, INC.          Date: December 9, 2005


**J&J COURT TRANSCRIBERS, INC.**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| Holiday RV Superstores, Inc. | ) | Case No. 03-13221 (MFW) |
| _____ | ) | |
| DOERGE CAPITAL COLLATERALIZED | ) | |
| BRIDGE FUND, L.P., a Limited Partnership, | ) | |
| ARMANDO ALONSO, an Individual, | ) | |
| FRANCISCO ALONSO, an Individual, | ) | |
| ERNEST DAVIS, JR., an Individual, and | ) | Adv. No. 05-52271 (MFW) |
| THOMAS HALL, an Individual, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Transferred from the United States |
| v. | ) | Bankruptcy Court for the Northern |
| | ) | District of Illinois |
| MARCUS LEMONIS, an Individual, and | ) | |
| FREEDOM ROADS L.L.C., a Limited Liability | ) | |
| Company, | ) | |
| | ) | |
| Defendants. | ) | Related to Docket No. ____ |

## ORDER GRANTING PLAINTIFFS' MOTION TO ABSTAIN AND REMAND

Upon the record set forth at the December 5, 2005 hearing, and having heard argument,

on the Motion of Plaintiffs, Doerge Capital Collateralized Bridge Fund, L.P., Armando Alonso,

Francisco Alonso, Ernest Davis, Jr., and Thomas Hall to Abstain and Remand State Court Action

to the Circuit Court of Lake County, Illinois, the Court hereby remands the State Court Action to

the Circuit Court of Lake County, Illinois.

_____
Judge

Dated: ___Dec. 21___, 2005

## TRANSMITTAL SHEET FOR NOTICE OF APPEAL TO THE
## U.S. DISTRICT COURT FOR THE DISTRICT OF DELAWARE

**Adversary Case #:   05-52271**
**Related Bankruptcy Case #:** 03-13221
**District Court Civil Action#:**

**Deputy Clerk Transferring Case:**          Lori M. Coster

**Case Type:**                               Adversary

**Nature of Suit:**                          454

**Cause of Transmittal:**                    Notice of Appeal

**Parties:**                                 Doerge Capital, et al. v. Lemonis, et al.

**Plaintiff's Counsel:**

                                             **Jeremy W. Ryan**
                                             Saul Ewing LLp
                                             222 Delaware Avenue
                                             Wilmington, DE 19899
                                             usa
                                             302-421-6805
                                             Fax : 302-421-5861
                                             Email: jryan@saul.com


                                             **Mark Minuti**
                                             Saul Ewing LLP
                                             222 Delaware Ave, Suite 1200
                                             P.O. Box 1266
                                             Wilmington, DE 19899
                                             302 421-6840
                                             Fax : 302 421-5873
                                             Email: mminuti@saul.com

**Defendant's Counsel:**

**Brett Fallon**
Morris, James, Hitchens & Williams
222 Delaware Avenue
10th Floor
Wilmington, DE 19801
usa
302-888-6888
Fax : 302-571-1750
Email: bfallon@morrisjames.com